## No 9062.

BOARD OF ADMINISTRATORS OF THE CHARITY HOSPITAL VS. C. E. GIRARDEY.

The final section of the Revised Statutes repeals "all laws and parts of laws on the same subject matter, except what may be contained in Revised Civil Code and Code of Practice, etc." The subject matter of the Act of 1805, entitled "An Act to regulate sales at auction," invoked in this case, is identical with that covered by the provisions of the Revised Statutes, under the heading of "Auctioneer" and "Auction Sales." So far, therefore, as the provisions of the act of 1805 have not been perpetuated in the Revised Statutes or the Codes of 1870, they are repealed.

APPEAL from the Civil District Court for the Parish of Orleans. Lazarus, J.

J. A. Gilmore and Henry Renshaw for Plaintiffs and Appellees.
Jonas & Nixon, H. Dufilho and Leovy & Kruttschnitt contra.

The opinion of the Court was delivered by

FENNER, J. The sole question presented in this case is whether defendant, a public auctioneer, is liable for the duty imposed by sections

145 and 161 of the Revised Statutes, in so far as the same is demanded on succession, insolvent and judicial sales made by him.

We considered this question very thoughtfully in the case of State vs. Girardey, 34 A. 620, wherein we said: "The law makes no distinction whatever in favor of such sales. The language is, '*all* property, rights or credits, which shall be sold at public auction, or at private sale, by any auctioneer (except such as are or may be exempted by law) shall be subject to a duty, etc., R. S. 145.' Unless there exists some law exempting sales of the sort above mentioned, they fall necessarily within the purview of the statute. We know of, and have been referred to no such law."

The defendant now claims to have discovered such a law, in the act of January 15, 1805, chap. IV. of the acts of that year. The discussion at bar was confined to the question whether or not the terms of that law covered such an exemption and it is one not free from difficulty.

We are relieved from its consideration, however, by our clear conviction that the act of 1805 is repealed by the final sections of the Revised Statutes of 1870, which declares that, "all laws or parts of laws, contrary to or in conflict with the provisions of this act, and *all laws or parts of laws on the same subject matter*, except what may be contained in the Revised Civil Code and Code of Practice of the present session, be and the same are hereby repealed," etc. R. S., sec. 3990.

To ascertain the identity of the subject matter of the act of 1805 with that included in the Revised Statutes, it is only necessary to refer to the respective titles and provisions of the two laws, The title of the act of 1805 is "An Act to regulate sales at auction;" whereas, that of the Revised Statutes, as relating to this subject, is "relative to auctioneers; to the manner in which persons may become auctioneers; their duties, powers, fees and privileges; the taxes to be paid by them; the penalty for disobeying law; and mode of making their sales."

The latter title will be found to cover and include all the purposes and provisions of the act of 1805.

The identity of subject matter is perfect. Unless, therefore, the provision of the act of 1805, from which it is now claimed that exemption results, has been perpetuated either in the Revised Statutes or in the Civil Code of Practice, it is clearly and unequivocally repealed.

The incorporation of the words "except such as are or may be exempted by law," cannot affect the case.

The exception still strictly confines the exemptions to those established by *law*, and when the law establishing them falls by repeal, the exemptions necessarily fall with it.

There is no room for construction here. The identity of subject matter is complete and the terms of the repealing clause unambiguous.

The very purpose of the Revised Statutes was to embody in one compendious and general statute all the scattered provisions of prior statutes of the State, and to enable the searcher after the law to be secure, that, as to the subject matters embraced therein, that statute, with the codes, contained the entire statutory law then left in force. It is a conclusive presumption that all prior statutes were passed in review, that those provisions which the legislator desired to perpetuate, were embodied therein, and that all omitted provisions were designedly repealed. We must do nothing to imperil the confidence with which the people and the profession have the right to rely on this presumption, by indulging in conjectures as to the legislative intent, which may or may not be well founded.

The fact that in the revision of the statutes made under legislative authority in 1852, the provisions of the act of 1805 now relied on were extended, lends strong force to the conclusion that their omission in 1870 and consequent repeal, was not only legally effective but also intentional.

This leaves the question in the precise *status* which it occupied at the date of our former decision, from which we see no reason to recede.

Since that decision, a session of the General Assembly has been held, at which this duty was considered ( Act No. 53 of 1882 ) and another session will speedily occur. If, unwittingly, we have contravened the legislative will, a remedy, at least for the future, may be found.

Judgment affirmed.

---

### DISSENTING OPINION

·BERMUDEZ, C. J. The section relied upon to claim the tax or duty from the defendant, manifestly except from the same, all sales made of succession and insolvency property and, therefore, warrants a judgment of relief in favor of the defendant.

It palpably derives from section 11, of Act 141 of 1848, which itself comes from section 3, of act 41 of 1839 which regulates the duties to be paid by auctioneers.

It is in this act of 1839, that for the first time are to be found the words : *Except such as are now exempted by existing laws.*

The question then arises, confronted by this vague reference to an exemption, whether in 1839 there existed or not, a law exempting from the duty any particular class of property.

Running backwards, two statutes are found on the subject: One of 1836, sec. 1, p. 56, relative to port warden sales, and another of 1805, passed by the territorial council, p. 16.

It is needless to refer to the act of 1836, as it has no material bearing on this case, save so far as it amends the last mentioned act, which it, therefore, notices.

Section 7 of the act of 1805, provides:

"That all goods and chattels, lands and tenements, which may be hereafter seized by any public officer for, or on account of any forfeiture or penalty; goods and effects of deceased persons, or effects detained for rent, or taken in execution, or damaged goods sold for the account of the concerned, and the goods of insolvent debtors, shall in no wise be subject to, but are hereby exempted and declared free from the duty aforesaid."

It is proper here to observe that section 8 of that act (1805) was amended by section 2 of the subsequent act of 1836, by striking out the words: *" sold at any auction store,"* and replacing them by the words: *"sold by any commissioned public auctioneer."* So that the section (8) would read:

"All goods and chattels, lands and tenements sold by any commissioned auctioneer, whether at public or private sale, shall be subject to the duty before mentioned."

By reference to the Digest of the statutes of the State, reported by the compilers thereof, in 1852, under authority of the acts of 1848 and 1850, it appears that section 7 of the act of 1805 was published among the laws then in force.

An attentive reading of that section impresses forcibly the mind that its object was to exonerate from the duty three specific classes of property:

1. That seized and sold under writs issued by judicial authority.

2. That belonging to deceased persons, or successions.

3. That composing the estate of insolvent debtors, or bankruptcies.

The amendment of that section by the act of 1836, was not designed to and did not disturb that exemption from duty.

The acts of 1839 and 1848 first continued it in force, by the fact of the reference to the property, the sale of which was exempt from duty by law. The supervisory legislation of 1855 and of 1870 have bridged it over with all its pristine vigor and effect.

It is not exact to say that the last section of the Revised Statutes of 1870 (sec. 3990) has repealed it, because on the same subject-matter, for the obvious reason that this revisory legislation (sec. 145) itself provides that all property, *except that exempted by law*, shall be subject to duty.

A review of the legislation in force at the time of the adoption of the R. S. of 1870, dating as far back at least as 1855 and which is still in existence, discloses the double significant fact that, in furtherance of the design to alleviate the burden resting upon the transfer of property belonging to successions, to insolvencies and to incapacitated persons, the Legislature has subjected the same to a lighter commission in favor of auctioneers and sheriffs, and has specially authorized the sale of such property as well by the former as by the latter. Sec. 3549, R. S; Acts 1855, p. 106, and ex. sess. 20.

On principle, laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject. It is, therefore, but reasonable to conclude that the Legislature in passing a statute did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable, and hence a repeal by implication is not favored. On the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together. Sedgwick on Stat. and Const. 106.

In the present instance, the exemption from duty of succession and insolvency property has been under special and constructive legislative consideration and apparently the object of unvarying solicitude, on at least eight different occasions, in 1805, 1836, 1839, 1848, 1852, 1855, 1856 and 1870.

It is indisputable that the act of 1805 was in force at the date of the supervisory legislation of 1855 and that it has survived it. The act of that year, relative to auctioneers (No. 104, p. 106) concludes, as does the classification of 1870, termed the "Revised Statutes," by repealing all laws in conflict with its provisions, or on the same subject-matter, save those contained in the Codes.

As regards that legislation, it has been more than once held that an interpretation leading to a mischievous result should be rejected; that the legislative intent should be sought and enforced; that the repealing clause did not recall such pre-existing statutory provisions as were re-enacted in the revisory statutes. 11 A. 439, 470, 609; 12 A. 390, 431; 14 A. 620, 667, 720, 730.

39

The very repetition *totidem verbis* of sec. 7, of Act 104 of 1855, more than implies—it announces—a will to retain in 1870 the legislation bridged over by the act of 1855.

Section 145, as well as sec. 149, which also intimates that there are sales not subject to duty, are certainly pregnant with, and therefore vivify, the act of 1805, which by formal legislative behest, tenaciously adheres to their entrails. To pretend the reverse is to do violence to the intent of the law-giver and to extirpate it from the solemn expression of his will.

Remission for relief to the mercy or liberty of an impotent Legislature is no crumb of comfort. It is less than a deception and fleeting shadow. Const. 1879, art. 57.

It does seem illogical and unreasonable, therefore, to conclude that however much the section relied on (145), itself excludes from duty the property exempt by law, it is to be understood and construed as announcing the reverse of its meaning; that is, that there exists no such property or exemption, or that if such be the law, it was, by the subsequent last section, revoked and nullified. Such conclusion appears repugnant to the legal mind.

There has not been uttered even a whisper that property sold by sheriffs, under writs or orders of courts, is subject to the duty, and the reason is that there exists indeed no such liability, simply owing to the exempting act of 1805. If that law be considered as repealed, then property sold by sheriffs in furtherance of judicial orders, writs and authority, must pay the tax to the State. The only motive or consideration which can satisfy the mind in justifying the immunity to this day is, that as the property passes not by the option or will of the owner but by the power of judicial authority, it should not be burdened. If that be the reason, then why should not the property composing the assets of successions and of insolvencies, which likewise passes by public sales, which are also made by judicial authority, be in the same manner and to the same extent liberated from the duty?

It was advanced, without contradiction, in argument that the State authorities have invariably considered the Act of 1805 as in force, as at all times they have distributed among the auctioneers forms or blanks for their returns to the Auditor, implying the exemption, and that no duty has ever been paid on that class of property into the State Treasury. The undenied assertion is certainly entitled to some consideration and moral weight.

The records of the courts and the memory of ancient practitioners fail to recall a single instance in which the State has ever claimed the duty, or in which an auctioneer has ever demanded it.

If such has been the constru⸱ ı put on the law by the State herself, how inequitable it would be to hold th efendant liable for a tax which never was considered as due and exi⸱ ⸱.

As was well said by counsel of de ⸱nt, the clear meaning of this exception is to exclude from the paym⸱nt of the duty all property exempt by law at the time of the passage of the R. S.

Indeed, if the object in view was not to except all property exempt at that date, then language is meaningless and the Legislatures that have used it four times, at least, have spoken simply to say nothing.

Section 145, R. S. incorporates sec. 7 of the Act of 1805, and must be read as follows:

"All property  *  *  *  which shall be sold  *  *  *  by auctioneers, *except that belonging to successions and insolvencies,*  *  *  *  shall be subject to a duty," etc.

To contend for the reverse, as is done by the plaintiffs, is arbitrarily to expunge from the law its expressed meaning and to feed charity on the fruits of an iniquitous exaction.

Rehearing refused.

Poché, J. I concur in the dissenting opinion of the Chief Justice.