The general jurisprudence on the same subject is thus stated:

"As a general rule, the right of recovery for mental suffering resulting from bodily injuries is restricted to the person who has suffered the bodily hurt. Mental distress caused by sympathy for another's suffering is not a recoverable element of damages. A parent cannot recover for mental distress and anxiety on account of physical injuries to a child, nor can a parent recover damages for anxiety for the safety of his or her child placed in peril by the negligence of another.

"Similarly it has been held that a husband's mental suffering caused by his wife's condition cannot be shown to increase the amount of damages." 8 Am. & Eng. Ency. Law (2d Ed.) p. .664.

Hence, we are of opinion that the petition discloses no cause of action, in so far as damages are claimed for the consequences of the mental shock suffered by the mother.

116 La.—35

The petition, however, discloses a cause of action for exemplary damages in favor of the two minor children, who were arrested and prosecuted for malicious mischief. Under the allegations the arrest was unlawful and the prosecution was malicious.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed as to the minors, Lawrence and Alexander Sperier, and it is now ordered that, as to the demand of said minors for exemplary damages, the exception of no cause of action be overruled, and this cause be remanded for further proceedings according to law, and it is further ordered that as thus amended the judgment appealed from be affirmed; costs of appeal to be paid by the defendant and appellee.

NICHOLLS, J., absent.

(41 South. 324.)

No. 15,973.

Succession of DUPRE.

(May 7, 1906. On Rehearing June 4, 1906.)

1. ADOPTION—PROCEDURE—TUTOR AD HOC—NECESSITY—STATUTES—IMPLIED REPEAL.

Where two statutes prescribe a different manner of doing the same thing; e. g., the manner of adopting children, the later act supersedes the earlier, though not having a repealing clause. If the earlier required a tutor ad hoc to be appointed, and the later is silent on the subject, a tutor ad hoc need not be appointed.

2. SAME—NOTARIAL ACT—EXECUTION.

Where a minor has neither parent nor tutor, the notarial act by which he is adopted need not be signed by any one for him.

3. SAME—EFFECT—RIGHTS OF PARENTS.

The parents no longer have any authority over the foundling; for all purposes of the adoption of the foundling the situation is as if the parents were dead.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

In the matter of the succession of Eugene Dupre, the tutor of Helen Coleman, filed in

opposition, and from the judgment, she appeals. Reversed and remanded.

Philip Joseph Patorno and Emile Joseph Méral, for appellant. E. Howard McCaleb, E. Howard McCaleb, Jr., and Clegg & Quintero, for appellees. Francis Charles Zacharie and Harry Prentiss Sneed, amici curiæ.

PROVOSTY, J. The administrator of the succession of Eugene Dupre having filed the account of his administration, the tutor of the minor Helen Coleman, filed an opposition, claiming that his ward should be placed on the account as heir to one-fourth of the succession, in her quality of adopted child of the decedent.

Wishing to adopt the child, Helen Coleman, the decedent, Eugene Dupre, and his wife went before a notary, and passed an act which they and the notary thought conformed with all legal requirements. The act contains the declaration of the adopters that they adopt the child, and recites that the child is a foundling four years old, that it was given to Sister Veronica, that it has been cared for by the St. Vincent's Infant Asylum, and that Sister Veronica consents to the adoption. It is signed by the adoptants and by Sister Veronica, who is the Mother Superior of the Asylum.

The contention of the administrator is that the act should have been signed by the child's parents, who were presumably living; or by a tutor ad hoc, if the parents were dead.

We will first dispose of the contention that the parents of the child should have signed the act. The child was a foundling, received and cared for by Sister Veronica from charity. Article 213, Civ. Code, provides that "the foundling, whom persons from charity have received and brought up, cannot be claimed by its father and mother." From this the only possible deduction is that the parental authority is at an end; a deduction confirmed by the fact that article 272, Civ.

Code, authorizes the appointment of a tutor to a foundling. If the father and mother have lost the right to claim the child for themselves, a fortiori have they lost the right to represent the child in the matter of its adoption by a stranger. A foundling, then, in so far as adoption is concerned, must be considered as a child without parents; as standing on the same footing as a child whose parents are dead.

Moreover, the opponent offered to prove that the parents of the child were dead at the time of the adoption; and we think he should have been allowed to do so. The evidence was objected to on the ground that "the act itself must contain all the essentials required by law for the adoption of a minor child." So far as this objection involves the proposition that an act of adoption, like every other act, must, in order to be valid, contain every thing essential to its validity, it is a mere truism. But so far as it involves the proposition that the death of the parents cannot be proved dehors the act of adoption, we are far from agreeing with it. We believe to the contrary that the death of the parents is not susceptible of proof by the notarial act; unless, perhaps, of mere prima facie proof. Notarial acts are evidence of those things the parties to them have consented to, and of nothing more. The parties can draw up an act to evidence those things they have agreed to, but cannot draw up an act to evidence a thing which stands as an independent fact upon which their consent can have no influence. The death or continued existence of the parents of this minor is an independent fact, to be proved like any other independent fact, and not necessarily by the notarial act of the parties, which could be at most but prima facie evidence of it.

The next contention of the administrator to which we now pass, that a tutor ad hoc should have been appointed to sign the act

of adoption for the minor, depends upon the proper construction of Act No. 31, p. 79, of 1872, which reads as follows:

"An act providing for the manner of adopting children.

"Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened: That any person above the age of twenty one years shall have the right by act to be passed before any parish recorder or notary public, to adopt any child under the age of twenty one years, provided, that if such child shall have a parent, or parents, or tutor, that the concurrence of such parent or parents or tutor shall be obtained and as evidence thereof shall be required to sign said act."

Adoption was authorized by the Code of 1808, but was abolished by the Code of 1825. It was re-established by Act No. 48, p. 130, of 1865, which act was amended by Act No. 64 of 1868, p. 77. These acts are incorporated in Rev. St. §§ 2323 to 2328. They provide for adoption by means of judicial proceedings, and require that a tutor ad hoc be appointed to represent the proposed adoptee in the judicial proceedings, in case he is a minor and has no tutor.

It will be noticed that the amendatory act of 1872 transcribed above requires that the concurrence of the parent or tutor of the child shall be obtained if the child has a parent or a tutor; but that it contains no requirement that a tutor ad hoc shall be appointed in case the child has neither parent nor tutor. It will be noticed also that the act does not contain a repealing clause. And it will be noticed, finally, that the purpose of the act was to change the manner of adopting children from judicial proceeding to notarial act.

It seems to us perfectly plain that the act supersedes, and repeals by implication all former legislation on the same subject-matter. The rule is that where a statute purports to cover the whole subject-matter, it supersedes former laws on the same subject-matter. As expressed by the Supreme Court of the United States in the case of Tracy v.

Tuffly, 134 U. S. 207, 10 Sup. Ct. 527, 33 L. Ed. 879:

"A previous statute will be held to be modified by a subsequent one if the latter was plainly intended to cover the whole subject embraced by both and to prescribe the only rules in respect to that subject which are to govern."

See, also, Stewart v. Kahn, 11 Wall. (U. S.) 502, 20 L. Ed. 176; United States v. Claflin, 97 U. S. 546, 24 L. Ed. 1082; Eudlick on Construction of Statutes, p. 320, § 241; Black Interpretation of Laws, p. 361, § 133; Stafford v. His Creditors, 11 La. Ann. 470; State v. Brewer, 22 La. Ann. 275; Board v. Girardey, 36 La. Ann. 605.

That this act No. 31 was intended to cover the whole subject-matter there can be no room for doubt. It says so expressly in its title: "An act providing for the manner of adopting children." "The" manner; not a manner, or one of the manners, or part of the manner; but "the" manner; i. e., the exclusive manner.

Moreover, the terms of the act are sweeping, so much so that the Legislature found it necessary to add a proviso in order that the concurrence of even the parents of the child might not be held to have been dispensed with. There can be no doubt that the Legislature understood that such would be the effect of the terms of the act, unless such a proviso was added, there could have been no other reason for adding the proviso.

The effect of the contention of the administrator would be to relegate back to the courts this matter of adoption, and thus defeat and nullify the statute, whose sole object was to take the matter of adoption out of the courts and make it a matter of private transaction by notarial act. And, what is worse, would do this in the case of foundlings—the very case in which adoption should be facilitated; in which the adoptants would most likely be turned from their purpose by the bother of having to go into court about the matter.

The fears of the learned counsel for the administrator that if the supervision of the courts is removed undesirable persons might adopt helpless children, are, we apprehend, groundless. The child receives a right of inheritance and is required to give nothing in return. As well might we fear that undesirable persons might make helpless children their universal legatees. It is more likely that desirable persons might be deterred from adopting foundlings by the trouble of judicial proceedings than that undesirable persons might be induced to adopt them by the facility of the notarial proceeding. At any rate, the Legislature seems to have thought so; for it is not apparent what other reason could have led to the change in legislation.

The argument of counsel that Act No. 31, p. 79, of 1872, if interpreted as dispensing with the concurrence of a tutor ad hoc, would be unconstitutional, because, then, the adoption would be without consent, and the minor would be deprived of property or liberty without due process of law—can hardly be serious. As a matter of fact, the minor is not deprived of property or liberty, and he is, in law and in fact, incapable of consent. Nor any more serious can be the argument that consent is of the essence of adoption. Adoption has no particular essence, it is a purely legislative fiction; and, hence, it is what the Legislature chooses to make it.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment recognizing the minor, Helen Coleman, as the adopted daughter of the decedent, Eugene Dupre; and, as such, heir to one-fourth of his estate, and ordering the administrator of the succession of the said decedent to place her on his tableau accordingly. The succession to pay all costs.

## On Rehearing.

MONROE, J. The trial in the district court, in so far as the introduction of evidence was concerned, having practically terminated with the ruling of the judge a quo excluding the act of adoption offered on behalf of the opponent (the minor, Helen Coleman), we are of opinion that the decree handed down, in deciding the whole case upon the merits goes too far, and should have been confined to correcting the error in that ruling.

It is therefore adjudged that the decree heretofore handed down be amended and recast so as to read as follows, to wit: It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this case be remanded to the district court to be there proceeded with according to law, and to the views expressed in the foregoing opinion; the costs of the appeal to be paid by the succession and those of the district court to await the final judgment.

NICHOLLS, J., absent.