## McDONALD et al. v. TEXAS EMPLOYERS' INS. ASS'N. (No. 9192.)[*]

(Court of Civil Appeals of Texas. Dallas. Dec. 6, 1924. Rehearing Denied Jan. 10, 1925.)

**1. Parent and child ⬤⟳1—"Parent" defined.**

The term "parent" primarily means one who procreates, begets, or brings forth offspring as father or mother, and literally can only include father or mother related by blood, excluding adopting parents, and persons in loco parentis.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Parent.]

**2. Master and servant ⬤⟳348 — Workmen's Compensation Law liberally construed.**

The Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) should be liberally construed with a view of protecting injured employés or de-

pendents, especially in view of Vernon's Sayles' Ann. Civ. St. 1914, p. 4862, Final Title, § 3. ·

**3. Adoption ⬤⟳20—Reciprocal duties of adopted parent and child same as where relationship is by blood.**

By statute, Rev. St. arts. 5, 6, the reciprocal duties of parent and adopted child are identically the same as between parent and child by blood.

**4. Master and·servant ⬤⟳388 —."Dependent parent" includes mother by adoption.**

Under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15), providing benefits to surviving dependent parents, the term "dependent parent" includes a mother by adoption who, at the death of her adopted son, was dependent upon him for support.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dependent.]

**5. Adoption ⬤⟳18—Parent and child ⬤⟳15— Status of adopted child and adopting parent not identical with relationship of one in "loco parentis."**

The status of adopted child and adopting parent differs from relationship existing where one person stands in loco parentis to another; the former being a condition of permanency, while the latter is distinctly temporary.

**6. Adoption ⬤⟳7—Right of adopting parent to compensation not affected by failure of unknown parents to consent to adoption.**

The right of adopting mother, under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15), to compensation for death of child adopted as a foundling whose parents were unknown, is not affected by noncompliance with Acts 30th Leg. (1907) c. 47, requiring consent of parents; such compliance being manifestly impossible.

**7. Master and·servant ⬤⟳388—Compensation under Workmen's Compensation Act no part of estate of deceased.**

Notwithstanding that Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) provides that compensation shall be distributed among beneficiaries according to laws of descent and distribution, such compensation never becomes part of estate of deceased, and is not liable for his debts, but is the exclusive property of beneficiaries. ·

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Mary T. McDonald and another against the Texas Employers' Insurance Association to recover as beneficiaries on a policy of compensation insurance issued under the Workmen's Compensation Law. From a judgment of dismissal, petitioners appeal. Reversed and remanded.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellants.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellee.

---

LOONEY, J. The court below sustained a general demurrer to appellants' petition and dismissed their suit, from which they prosecute this appeal.

Mrs. Mary T. McDonald, joined by her husband, filed this suit as a beneficiary on a policy of compensation insurance issued by appellee under the provisions of the Workmen's Compensation Law of this state (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for the benefit of the employees of the Texas Boiler Works of Dallas, Tex. Appellants allege that Clifford Peyton Lloyd was the legally adopted son of Mrs. McDonald, and that his death, which occurred on the 17th day of January, 1922, was from an injury received in the course of his employment with the Texas Boiler Works. The petition is in all respects legally sufficient and states a cause of action; that is, if Mrs. McDonald, the adopting parent of the deceased, is to be considered a parent within the meaning of the Workmen's Compensation Law. This is the only question presented for our determination and seems to be one of first impression.

Article 5246—15, Vernon's Texas Statutes, 1918 Supplement, reads:

"The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband, * * * the wife * * * and the minor children, without regard to the question of dependency, dependent parents and dependent grandparents and dependent stepmothers and dependent children or dependent brothers and sisters of the deceased employee," etc.

[1] The primary meaning of the term "parent" is one who procreates, begets, or brings forth offspring, as father or mother; hence, when the term is literally interpreted, it can only include a father or mother related by blood to the child, and by the same token would, of course, exclude adopting parents and all others who by reason of the facts or circumstances stand in loco parentis. The term, however, has received in different jurisdictions either a literal or liberal interpretation depending on the connection in which it was employed, and thus it has been held in such instances to either include or exclude, as the case may be, adopting parents or those standing in loco parentis.

The nearest approach to a decision of the question before us is found in cases from the Supreme Court of Massachusetts, where the Workmen's Compensation Act of that state was under review. The courts of that state held that a stepchild was not a "child" within the meaning of the law, and was not entitled to share in the compensation allowed on account of the death of the stepparent. Coakley's Case, 216 Mass. 71, 102 N. E. 930, Ann. Cas. 1915A, 867; Holmberg's Case, 231 Mass. 144, 120 N. E. 353.

[2] The Workmen's Compensation Act of this state is a new departure in legislation. It creates new liabilities, without reference to the negligent conduct of those upon whom the burden of compensation is cast. One main purpose of the Legislature was to provide for awards of compensation to be made to injured employees on account of accidental industrial injuries and, in case of their death, to those named as their dependents. Although these workmen compensation statutes are in derrogation of the common law, courts generally hold that, being remedial in nature, they should be liberally construed with the view of protecting the injured employees or their dependents (28 R. C. L. § 50, p. 755), and especially is this the rule of construction in this state. See Final Title, § 3, p. 4862, V. S. T. C. S.; Millers' Mutual Casualty Co. v. Hoover (Tex. Com. App.) 235 S. W. 864; Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 74, 28 A. L. R. 1402.

While this court, even under the sway of a broad interpretation, would not be justified in extending the scope of the statute so as to include, in the list of beneficiaries, persons not named or comprehended by the terms used, yet we do conceive it to be our duty to give full effect to the legislative purpose and to give, not niggardly, but generously, all the meaning the Legislature intended.

This brings us to a comparison of the status of the natural parent and his child with that of the adopting parent and the child, to ascertain if there can be found such a difference in the respective duties and obligations of these relations as would likely have moved the Legislature to include the one and exclude the other from the benefits of this act.

The leading duties of a natural parent to his legitimate child are, to protect him, educate and maintain him, and, being thus legally obligated, the law accords to the parent the right to the custody, control and services of his child.

[3] An examination of the law regulating the relation between the adopting parent and the child, in the respects just named, will show that the status of the two relations are identical. That is to say, it is just as much the duty, under the law, of an adopting parent to protect, educate, and maintain his adopted child as if he were the natural parent, and as a corollary, he is entitled, under the law, just as the natural parent is, to the custody, control, and services of the child.

Article 5 of the Revised Statutes reads as follows:

"The child or children so adopted shall have the same rights as against the person or persons adopting said child or children for support and maintenance, and for proper and humane treatment, as a child has, by law, against lawful parents."

Article 6 is as follows:

"It shall be unlawful for any person adopting any child under this title to transfer his authority and custody to any other person."

Thus it is perfectly apparent that, with reference to the leading duties and obligations of parent and child, the status of the adopting parent and the child is as definite and permanent as that of the natural parent and child.

Leaving the status of parent and child as regulated by law, and going into the domain of moral duties, we find that, while the child is under no legal obligation to support his parent, yet gratitude, which is as binding on the foundling who has been reared from infancy to manhood by a kind foster parent as it is on the natural child of the parent, bids them aid, comfort, and relieve a parent, natural or adoptive, who through misfortune is left in want. This moral obligation, finding its basis alone in gratitude, is eloquently expressed by Blackstone as follows:

"They who protect the weakness of our infancy are entitled to our protection in the infirmity of their age; they who by sustenance and education have enabled their offspring to prosper, ought in return to be supported by that offspring in case they stand in need of assistance." First Bl. Com. 453.

Accordingly, when we take a cross-section, so to speak, of the status of the natural parent and his child and that of the adopting parent and the child, viewing their mutual duties, rights, and obligations, legal and moral, we fail to find a difference upon which the Legislature could have seized as a reason for including one and excluding the other from the benefits of the compensation act. It cannot with reason be assumed that the Legislature would include a dependent natural mother and exclude under the same facts and circumstances a dependent adoptive mother, as in each case the loss is the same and the sound public policy that requires the loss to be repaired in one instance will be subserved by repairing it in the other.

[4] Failing to find a sufficient reason for the Legislature to have made a distinction, we are of the opinion that it had no such intention, and that the term "dependent parent," used in the Compensation Act, was intended to, and does, include a mother by adoption who, at the death of her adopted son, was dependent upon him for support.

[5] We should not confuse the status created by the legal adoption of a child with that status created by the rather loose relation of one standing in loco parentis. Most of the adjudicated cases to which our attention has been called involve this latter relation. The status created by the legal adoption of a child is one of permanency; in fact, is just as fixed, definite, and permanent in legal rights and obligations as is the status of a natural parent and his child, whilst the status of the relation between one standing in the place of a parent and the child is of a temporary nature. This relation is usually created by stepparents taking into their family stepchildren, or relatives taking minor children into their families, or any other person who puts himself in the situation of the lawful parent with reference to the office and duty of making provision for the child. All such are said to stand in loco parentis, and, as long as the relation exists, the rights and duties with reference to the child are the same as those of the natural parent; but this relation may be terminated at will by either the person in loco parentis or by the child.

A very satisfactory explanation of the rights, obligations, and duties of one standing in loco parentis is found in the opinion in Schrimpf v. Settegast, 36 Tex. 296. The court said:

"But we are of the opinion that the weight of authority has established a doctrine that would hold a person who had, through motives of kindness or charity, received an orphan child into his family, whether it be a stepchild or an entire stranger, and treated it as a member of his family, as standing in loco parentis, so long as such child should see fit to remain in such family, or so long as it should be permitted thus to remain; and while that relation should exist, the party who stood in loco parentis would be bound for the maintenance, care, and education of such child, and would be entitled to his reasonable services, without being liable to pay for the same, only in the way of support, unless there had been an express promise to that effect."

Appellee criticizes this case because the decision was rendered by what is historically known as the "Semicolon Court." However, that may be, the opinion speaks for itself, is well reasoned, fully sustained by American authority, and has neither been overruled, modified, nor questioned; on the contrary, it was recently cited with approval by the Court of Civil Appeals in Saunders v. Alvido, 52 Tex. Civ. App. 356, 113 S. W. 992.

As we have just seen, the relation existing between an adopting parent and the child is permanent, continuing, and cannot be abrogated by the parent; whilst the status of one in loco parentis is temporary, and may be abrogated at will by either the person thus standing in loco parentis or by the child. This distinction is a material one, and no doubt had much to do in influencing the decision of the Supreme Court of Massachusetts in Coakley's Case, 216 Mass. 71, 102 N. E. 930, Ann. Cas. 1915A, 867.

Appellee argues that the doctrine of the Coakley Case settles the question under consideration against the contention of appellant. In the Coakley Case the deceased employee left surviving, among others, two stepchildren, members of his family, to whom he stood in loco parentis. The Supreme Court of Massachusetts, in denying stepchildren the right to an award of compensation on account of the death of their stepfather, used the following significant language:

"That it (the Workmen's Compensation Act) does not include one standing in the place of

a parent seems to follow from *the circumstance that there is no continuing obligation on one who has assumed such a relation. It may be abandoned at any time.*" (Italics ours.)

The reasonable inference from this language is that, if there had existed a "continuing obligation" on . the part of Coakley to maintain and educate his stepchildren, the court there would have held that the term "children," used in the Workmen's Compensation Act of Massachusetts (St. 1911, c. 751, as amended by St. 1912, c. 571), included as beneficiaries legally adopted stepchildren.

As illustrative of the liberal tendency of the courts of this state in construing statutes involving the subject under discussion, we call attention to the case of Saunders v. Alvido, supra, where a sister, standing in loco parentis to a minor brother, was permitted to maintain a suit as "an aggrieved person" because of the illegal sale of liquor to her minor brother. In that case the court used this language:

"The rights and duties of one standing in loco parentis seem to have been uniformly held by the courts to be the same as those of the parent, and any cause of action accruing to a parent by reason of such relationship would under similar circumstances accrue to one standing in loco parentis." Citing Williams v. Hutchinson, 3 N. Y. 312, 53 Am. Dec. 304; Schrimpf v. Settegast, supra; Whitaker v. Warren, 60 N. H. 20, 49 Am. Rep. 302; 17 Am. & Eng. Enc. of Law (1st Ed.) 342.

Also, in Snowden v. State, 12 Tex. App. 105, 41 Am. Rep. 667, appellant was prosecuted for an aggravated assault and battery on his minor sister, to whom he stood in loco parentis. His defense was that he was justified in exercising moderate restraint, under a provision of the law to the effect that violence does not amount to assault or battery in the exercise of moderate restraint or correction by a parent over the child. The trial court refused to recognize this as a defense, but, on appeal, the contention of appellant was sustained by the Court of Appeals. Judge Hurt, for the court, said:

"Does this law shield a person who stands in loco parentis towards the injured party, or must he be in fact the parent? We are of the opinion that it is not necessary for the defendant to be the parent of the assaulted party, to entitle him to the provisions of the above article."

It is evident from these decisions that our courts apply a broad and liberal rule in construing statutes in favor of those in loco parentis, assimilating their status to that of natural parents.

Appellee contends that the question presented involves, not so much a construction of the Workmen's Compensation Act, as it does the duties of an adoptive parent under the statutes; that the only authority given the adopting parent is to make the child an heir, without the right to the care or custody of the child or to make it a member of his family. The cases relied on in support of this contention are: Eckford v. Knox, 67 Tex. 204, 2 S. W. 372; Taylor v. Deseve, 81 Tex. 247, 16 S. W. 1008; Logan v. Lennix, 40 Tex. Civ. App. 62, 88 S. W. 364; and White v. Richeson (Tex. Civ. App.) 94 S. W. 202. Our Supreme Court, in Eckford v. Knox, supra, construing the act of 1850 relating to the adoption of heirs, held that the adopted party was given the position of a child only so far as to make him the heir of the adopter, but did not constitute him a member of the latter's family with such duties and privileges as that relation would imply. The other cases mentioned follow the construction given the statute in Eckford v. Knox; in fact, each of the other decisions in this respect is based upon the Eckford-Knox Case.

The law of adoption of this state as it exists to-day and as it existed on November 17, 1911, the date when Mrs. McDonald adopted the deceased, is radically different from the law brought under review in the cases mentioned above. The statute has undergone two amendments; one in 1907 (Acts 30th Leg. [1907] c. 47), and the other in 1920 (Acts 36th Leg. [1920] 3d Called Sess. c. 62 [Vernon's Ann. Civ. St. Supp. 1922, arts. 3, 4]). The act of 1907 provides that where the parent executes an instrument of writing, transferring his parental authority and custody over the child to the adopting party (the amendment of June 19, 1920, adds), or where the parent has voluntarily abandoned such child and left the same to the care of others for a period of at least three years, or voluntarily left such child to be cared for by charity for a period of at least three years, in either event, if such child is adopted in accordance with the provisions of the statute, all parental authority and right to the custody of the child on the part of the natural parents are transferred to the adopter.

The adopted child is given the same right as against the adopting parent for support, maintenance, and humane treatment as a child has by law against his natural parents, and it is made unlawful for the adopter to transfer his authority and custody to any other person. Under these amendments, the relation between the adopting parent and the adopted child is in all essentials the same as between the natural parent and his child. It follows, therefore, that by reason of the changes wrought in the law, the doctrine announced in the cases mentioned above is no longer the law of this state.

[6] It is not shown that the natural parents of Clifford Peyton Lloyd executed such an instrument in writing transferring parental authority and custody as is contemplated in the amendment of 1907, but this was not

to be expected; in fact, was impossible, for the reason that the child was a foundling and his parents unknown. The facts are that in November, 1900, when the boy was only two weeks old, Mrs. McDonald received him from a charitable institution in the city of Shreveport, La.; that thereafter she cared for, reared, and supported him as her own child, and on November 17, 1911, in accordance with the statutes of this state, adopted him as heir. The law never requires the doing of an impossible thing. The old maxim, "Impossibilium nulla obligatio est," comes to the rescue of a situation like this. The provision of the statute with reference to the execution of the written transfer of parental authority presupposes the existence of parents. The very unnatural, natural parents of this boy masked their identity, no doubt, in order to hide their shame; hence he is to be treated as without parents, or that their parental authority was at an end.

A very similar question arose in the Dupre Case, decided by the Supreme Court of Louisiana. In that case the court was considering the adoption of a foundling under a statute that required the notarial act of adoption to be signed by the child's parents. The legality of the act of adoption was questioned because the parents did not sign the act. In disposing of the question the court said:

"The child was a foundling, received and cared for by Sister Veronica from charity. Article 213, Civ. Code, provides that 'the foundling, whom persons from charity have received and brought up, cannot be claimed by its father and mother.' From this the only possible deduction is that, the parental authority is at an end; * * * a foundling, in so far as adoption is concerned, must be considered as a child without parents; as standing on the same footing as a child whose parents are dead." Succession of Dupre, 116 La. 1090, 41 So. 324.

[7] Appellee makes the further contention that an adopted parent could not be a distributee under the foregoing provisions of the Compensation Act, for the all-sufficient reason that under our statutes of descent and distribution he does not inherit from the adopted, save to the extent that the latter has received an estate from him.

If we understand this proposition, it is to the effect that no one can be considered a beneficiary under the Compensation Act who cannot under the law of descent and distribution inherit from the deceased. We do not assent to this proposition. The Workmen's Compensation Law creates in favor of the beneficiary a distinct cause of action for compensation to repair the loss occasioned by the death of the employee upon whom the beneficiary was dependent. This compensation never becomes a part of the estate of

the deceased and is not liable for his debts, but is the exclusive property of the beneficiary. The provision of the Workmen's Compensation Act, that the compensation "shall be distributed among such beneficiaries as may be entitled to same, as hereinbefore provided, according to the laws of descent and distribution of this state," has no significance other than the fact that the Legislature adopted this as a rule for the distribution of compensation among the beneficiaries.

This, as we understand it, was the construction given this provision of the law by the Commission of Appeals in Texas Employers' Insurance Ass'n v. Boudreaux, 231 S. W. 756.

We are of the opinion that Mrs. McDonald, the mother by adoption of Clifford Peyton Lloyd, dependent upon him for support at the time of his death, was entitled to maintain this suit as a dependent parent within the meaning of the Workmen's Compensation Law, and that the court below erred in sustaining the demurrer and dismissing the suit.

The judgment of the court below is reversed and the cause remanded.

Reversed and remanded.