28 So.2d 610

FOSTER v. RICHARDSON.

No. 37832.

Nov. 12, 1946.

Rehearing Denied Dec. 13, 1946.

C. B. Prothro, of Shreveport, for plaintiff-appellant.

Browne, Browne & Bodenheimer, of Shreveport, for defendant-appellee.

FOURNET, Justice.

The plaintiff, Billy Leroy Foster, claiming to have been adopted by Mr. and Mrs. O. E. Foster in 1919, is appealing from the judgment of the lower court dismissing his suit against his foster mother, now remarried, to recover Foster's half interest in the community formerly existing between him and his wife, she having been placed in possession of the entire community by judgment of court following her husband's death in 1935.

In his written reasons for judgment the trial judge concluded that since the plaintiff's mother was living at the time of his

adoption by the Fosters, her failure to concur in his adoption and to signify her acquiescence by signing the adoption papers, as required by the law in force at the time, rendered the same an absolute nullity under the jurisprudence of this state and that the adoption could not, therefore, be validated or cured by the action of the legislature in adopting Act 46 of 1932 confirming, approving, and validating all adoptions theretofore made and providing a period of 6 months within which any action to set aside or annul any act of adoption made prior to the passage of the act might be instituted.

■ Under the law applicable (Act 31 of 1872) at the time of plaintiff's adoption by the Fosters, if the subject child had a parent or parents or a tutor, their failure to concur in the adoption and to sign the same in evidence of such concurrence, rendered the adoption an absolute nullity. Succession of Pizzati, 141 La. 645, 75 So. 498; State ex rel. Birch v. Baker, 147 La. 319, 84 So. 796; In re Brands' Estate, 153 La. 195, 95 So. 603; State v. Ford, 164 La. 149, 113 So. 798; and Owles v. Jackson, 199 La. 940, 7 So.2d 192. There is only one exception to this rule and that is in the case of a foundling, such child, for the purpose of adoption, being "Considered as a child without parents." Succession of Dupre, 116 La. 1090, 41 So. 324, 325. See, also, In re Brands' Estate, supra; and Walker v. Myers, 150 La. 986, 91 So. 427,

430. In the Myers case a foundling is described as a "child 'whom persons from charity have received and brought up' (C. C. 213), or a child whom the parents have abandoned (Succession of Dupre, 116 La. 1090, 41 So. 324)," and such foundling "can not be claimed by its father and mother, unless they prove that the child was taken from them by force, fraud or accident." Article 213 of the Revised Civil Code.

The facts disclosed by the record are that the plaintiff, when but a year and a half, with his half sister, who was approximately six years old, were adjudged neglected and delinquents and, pursuant to the judgment of the court, placed by their mother in the Louisiana Children's Home Society at Jennings, Louisiana, to remain there until twenty-one years of age. Actually they remained only a few months in the home, the plaintiff being placed in the custody of Mrs. William E. Reese at Joaquin, Texas, the half sister being placed in the custody of Mr. McGee, Mrs. Reese's father. The exact manner in which this was accomplished is apparently unknown although Mrs. Reese says all arrangements were made by her father and that she neither signed nor received any papers or documents in evidence thereof. She further stated that at the time she acquired custody of the plaintiff, she was told his father was dead and that the mother was afflicted and unable to care for him and his sister and that she did not know anything whatever about the mother's where-

abouts and did not endeavor to ascertain them. Mrs. Reese shortly after this moved with her husband, who was a fisherman, to Bossier City, Louisiana, and, becoming ill, was placed in the hospital. She never again saw the plaintiff who, according to his sister, stayed on the river with the fishermen until Mrs. Ada DeLay received him into her home from charity and provided him with the necessities of life, where he stayed until he was adopted by the defendant and her husband by notarial act, with the consent of Mrs. DeLay. In the act of adoption is contained the declaration that the child was about two years old, "the date of his birth unknown, and his parents being both dead," and the further declaration that the Fosters adopted him as their own and that he would "from henceforth have and enjoy all the rights, advantages and privileges of a legitimate child, and be entitled to all the rights, advantages, privileges and benefits to which legitimate children are entitled under the laws of the State of Louisiana." In the same act Mrs. DeLay, declaring she received the child into her home from charity and provided him with the necessities of life, consented to his adoption and in evidence thereof signed the document.

The evidence shows that neither Mrs. DeLay nor the Fosters had any knowledge or intimation that plaintiff's mother was living at the time of his adoption and it was not until 1932, when the defendant found out from plaintiff's sister that his mother was still living and accompanied them when they went to see her that the defendant was even apprised of the existence of plaintiff's mother. At this time the plaintiff was 16 years old. From the time that these children were taken from her in 1917 the mother never saw them again until they visited her in 1932 in Beauregard Parish where she, an uneducated woman who could neither read nor write, was employed as a housekeeper. The defendant testified she told the plaintiff he could stay with his mother if he so chose or remain with them, his adopted parents. He chose to live with the defendant and her husband and he continued to enjoy all of the privileges of a child, as he had done theretofore, and the plaintiff's mother never thereafter visited him, contacted him, or made any effort to regain custody over him.

We are of the opinion that when the judgment was rendered declaring the plaintiff and his sister to be delinquents and ordering them placed in a home, they became wards of the state and the state's guardianship over them superseded any right the mother might have had. By this order she was not only deprived of their guardianship but they were forever cut off from her love, care, companionship, training, and guidance. From that time the plaintiff stood, as stated in Succession of Dupre, 116 La. 1090, 41 So. 324, "on the same footing as a child whose parents are dead." And when the plaintiff was

removed from the institution and given into the care of Mrs. Reese and was allowed, because of her illness and poverty, to wander on the banks of the fishing streams in the vicinity of Bossier City as a waif, suffering from exposure and lacking all proper attention and food and eventually attracting the attention of Mrs. DeLay who, from her generosity and charity, took him into her home and cared for him until he was adopted by the Fosters, he was a foundling in every sense of the word, subject to adoption without the necessity of his mother's concurrence in the proceedings.

■ We therefore conclude that the plaintiff's adoption was legal and that since his rights do not interfere with the rights of forced heirs he is entitled to all of the "rights of a legitimate child in the estate of the person adopting him." Article 214 of the Revised Civil Code.

Having reached this conclusion, it is unnecessary for us to pass upon the plaintiff's plea of estoppel and his plea of prescription, based on the provisions of Section 13 of Act 46 of 1932, and the defendant's special plea of the unconstitutionality of such section.

We now pass to defendant's alternative plea, that is, that the plaintiff, having joined the defendant on March 1, 1938, in an act of sale transferring a portion of the property described in plaintiff's petition to K. S. Moran, as recorded in Conveyance Book 380 at page 681 of the records of Caddo Parish, which property the defendant reacquired by deed from Moran dated January 3, 1939, and recorded in Conveyance Book 403 at page 678, divested himself of his interest in the property conveyed in the said deed.

■ Reference to these two deeds, certified copies of which are in the record, show that the first mentioned deed was executed by the defendant for the consideration of $8,000, $275 of this being paid in cash and the balance of $7,725 by note, payable in monthly installments. While the plaintiff did sign the deed, there is no mention of him or his ownership of the property in the body of the deed and the deed does not show that he received any portion of the consideration recited therein. Besides, in the second deed whereby the property was retransferred to the defendant by Moran it is declared that the consideration for such reconveyance is the surrender and cancellation of the $7,725 note which represented the purchase price of the deed from Mrs. Foster to Moran. Under these circumstances we entertain serious doubt that the plaintiff intended to divest himself of his interest in this property without consideration. Moreover, it was neither pleaded nor proved that he ever received any consideration therefor. Inasmuch, therefore, as the case was principally tried on the main demand and no evidence other than the two deeds referred to was introduced touching upon this mat-

ter, we think that in the interest of justice the case should be remanded for a final decision on this phase of the case after the hearing of further evidence and the admission of additional pleadings if the parties deem it to be necessary.

For the reasons assigned the judgment appealed from is annulled and set aside and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Billy Leroy Foster, recognizing him as the sole and only heir of O. E. Foster, deceased, and as such entitled to all of the property belonging to O. E. Foster, and more particularly to his half of the community property described in the petition, save and except that portion thereof described in the deed to K. S. Moran dated March 1, 1938, and recorded in Conveyance Book 380 at page 681 of the records of Caddo Parish and in the reconveyance of this property to Mrs. Richardson, the defendant, in deed dated January 3, 1939, and recorded in Conveyance Book 403 at page 678, records of Caddo Parish, for the final determination of which this case is hereby remanded to the lower court for further proceedings in accordance with the views hereinabove expressed. All costs of this proceeding to this state are to be borne by the defendant; all other costs are to await the final determination of the matter.

PONDER, J., absent.