McCALEB, Justice.
 

 On March 7th 1945, Mr. and Mrs. Robert Carter Green petitioned the Ninth Judicial District Court for the Parish of Rapides to adopt Patricia Paul, the seven year old daughter of Charles S. Paul, issue of his marriage with Annie Mae Lauderdale, deceased. Mrs. Green is the half-sister of the child’s father.
 

 The petitioners alleged that they have had custody of the child for the last 14 months by and with the consent of the surviving parent, Charles S. Paul; that they love the child as their own; that they are well able to take care of her and that they desire to adopt her. They further alleged that the child’s father has given his consent to the proposed adoption in writing and they attached to the petition a notarial declaration by Paul, wherein he waived citation and accepted service of the petition,
 
 *172
 
 concurred in its prayer and expressly consented to the adoption of his child.
 

 After consideration of the petition, the consent of the father and the report of the State Department of Public Welfare, the trial judge entered an interlocutory decree of adoption on May 28, 1945 and awarded the petitioners temporary custody of the child. On February 28, 1946, Paul appeared and moved for the revocation of the interlocutory decree of adoption on various grounds. The motion was resisted by petitioners and, after a hearing at which much evidence was submitted, the judge dismissed the motion and maintained the interlocutory 'decree of adoption. Paul has appealed from the adverse decision.
 

 In this court, counsel for Paul insists that the evidence taken below fully substantiates his, charge that Mr. and Mrs. Green are not morally or physically fit to become the adoptive parents of his child. On the other hand, opposing counsel maintains that the evidence is overwhelming that the petitioners are not only fully capable of caring for the child but that it is to her best interest that the adoption be finally granted. In view of the fact that the motion filed by Paul operates as a withdrawal of his consent to the adoption of his child, we must initially decide if his opposition does not effectively destroy the adoption proceeding as a matter of law, even though it be assumed that the withdrawal is founded on whim or caprice. Stated in another way, the primary question is whether a final decree of adoption can be granted under Act No. 154 of 1942 without the continuing consent of the natural parent of the’ child.
 
 [1]
 

 Our recent decision on April 21, 1947 in State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163, gives a negative answer. The point presented in that case was whether an adoption proceeding pending in the Juvenile Court operated as a bar to the exercise by the Civil District Court of its power to issue a writ of habeas corpus for a child on the petition of its mother, where it appeared that the mother had placed the child in the custody of the respondents and had consented in writing to its adoption. After discussing the provisions of Act No. 154 of 1942 and the prior jurisprudence in adoption cases, we held that the writ would lie because the withdrawal by the mother of her consent to the adoption had the effect of divesting the Juvenile Court of jurisdiction. See State ex rel. Terry v. Nugent, 212 La. 382, 31 So.2d 834, where State ex rel. Simpson v. Salter is discussed and distinguished.
 

 Thus, it is obvious that, while State ex rel. Simpson v. Salter adjudicates a conflict of jurisdiction, the predicate for the result is that an adoption proceeding cannot survive in the absence of the parents’
 
 *173
 
 consent which must continue until the rendition of the final decree. A re-examination of the jurisprudence on adoption and the provisions of Act No. 154 of 1942 and the prior statutes has served only to strengthen our belief in the correctness of the conclusion in State ex rel. Simpson v. Salter. A brief review of the law and jurisprudence is in order.
 

 While adoption is a practice of great antiquity, having been known to the Egyptians, Babylonians, Assyrians, Greeks and ancient Germans and having been recognized in the civil law before the time of Justinian, there is no adoption at common law and, in the United States, it exists only by statute (2 C.J.S., Adoption of Children, § 2 p. 370). It has been firmly settled by this court that adoption is a creature of statute; that, this being so, it is only what the law makes it and that, to establish the relation, the statutory requirements must be strictly carried out, otherwise, the adoption is an absolute nullity. See Succession of Pizzati, 141 La. 645, 75 So. 498; In re Brands’ Estate, 153 La. 195, 95 So. 603; Succession of Brand et ux., 162 La. 880, 111 So. 267; State ex rel. Monroe et ux. v. Ford, 164 La. 149, 113 So. 798; Hardy v. Mobley, 183 La. 668, 164 So. 621 and Owles v. Jackson, 199 La. 940, 7 So.2d 192.
 

 Adoption is defined to be the establishment of the relationship of parent and child between persons not so related by nature and the act of adoption creates a status rather than a contractual relation (2 C.J.S., Adoption of Children, § 1, pp. 367 and 368). Since the act or judgment of adoption has the effect of transferring the legal relation from the natural parents to the adoptive parents, it is generally made requisite in adoption statutes that the consent of the natural parents be had in order that the adoption be valid. And it has been held that statutes which do not provide for the consent of the natural parent are unconstitutional. 2 C.J.S., Adoption of Children § 5, p. 373. In Louisiana, the jurisprudence is settled that consent of the natural parents is necessary (see authorities supra) as it has either been specifically required or contemplated by our statutes. Acts Nos. 31 of 1872; 173 of 1910; 48 of 1924; 46 of 1932; 44 of 1934; 233 of 1936; 428 of 1938 and 154 of 1942.
 
 [2]
 

 
 *174
 
 Therefore, since consent is essential, it would seem to follow that it must be of a continuing nature and that the withdrawal of consent prior to rendition of a final decree is just as effective a bar to the adoption as though the consent had never been given. This view is well recognized in the jurisprudence of other states. Corpus Juris Secundum, in dealing with the effect of withdrawal of consent by the natural parent, declares: “Consent may be withdrawn at any time before adoption, even though given in writing, and accompanied by transfer of the custody of the child, and even though the natural parent had abandoned the child; and an adoption based upon a consent that has been withdrawn is void.” See 2 C.J.S., Adoption of Children, § 21, p.386.
 

 
 *175
 
 Many cases are cited in support of the above qu'oted text. In fact, while there are a few pronouncements to the contrary, the preponderance of the jurisprudence is that the continuing consent of the natural parent is vital to the validity of the adoption decree. See Application of Graham, Mo.App., 1946, 199 S.W.2d 68; In re McDonell’s Adoption, Cal.App., 1947, 176 P.2d 778; State ex rel. Platzer v. Beardsley, 1921, 149 Minn. 435, 183 N.W. 956; In re Anderson, 1933, 189 Minn. 85, 248 N.W. 657; In re Nelms, 1929, 153 Wash. 242, 279 P. 748; In re White’s Adoption, 1942, 300 Mich. 378, 1 N.W.2d 579, 138 A.L.R. 1034, and Wright v. Fitzgibbons, 1945, 198 Misc. 471, 21 So.2d 709.
 

 Counsel for petitioners expresses the belief that a natural parent does not have the right to withdraw his consent merely because he has changed his mind (as here) and asserts that, in the absence of attendant circumstances indicating just and valid cause, the judge has the right to grant a decree of final adoption. In support of this contention, he has cited two cases, viz., Wyness v. Crowley, 1935, 292 Mass. 459, 198 N.E. 758 and Lee v. Thomas, 1944, 297 Ky. 858, 181 S.W.2d 457. In additions to those matters, we take cognizance of In re Adoption of a Minor, 79 U.S.App. D.C. 191, 144 F.2d 644, 156 A.L.R. 1001; Erickson v. Raspperry, 1946, 320 Mass. 333, 69 N.E.2d 474; Skaggs v. Gannon, 1943, 293 Ky. 795, 170 S.W.2d 12; Hammond v. Chadwick, Tex.Civ.App., 1946, 199 S.W.2d 547 and- Adoption of Capparelli, Or., 1946, 175 P.2d 153.
 

 The two cases relied on by counsel, as well as the others above cited, are founded either upon an interpretation of the provisions of the particular state statute involved or Upon an equitable estoppel or upon the combined circumstances of equitable estoppel and consideration of the welfare of the child.
 

 The application of the doctrine of equitable estoppel in an adoption proceeding does not appeal to us. This court has repeatedly held that “adoption is a creature of the law, is what the law makes it, and that, to establish the relation, the statutory requirements must be strictly carried out; * * * ”. Owles v. Jackson, supra [199 La. 940, 7 So.2d 194], Consequently, dis-allowance of the right to withdraw consent on the basis of estoppel would be tantamount to an approval of the adoption where the consent is actually lacking — a result contrary to the intention of the law.
 

 Counsel for petitioners further says-that, since the concern of the State in the welfare of the child is paramount and' since it appears that it will be to the best interest of the child that the adoption be maintained, we should not disturb the finding of the trial judge as “good cause” has not been shown for the revocation of the-interlocutory decree. The case of State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740 and the cases cited in that deci
 
 *176
 
 sion are referred to in support of the contention.
 

 State ex rel. Guinn v. Watson was a habeas corpus proceeding for the custody of a child. The rule is firmly established that, where custody alone is the main issue, the welfare of the child is the paramount consideration of the court. However, that type of case is not to be confused with an adoption proceeding. In adoption, temporary custody is merely an incident to the ■demand. Manifestly, a decree of adoption cannot be predicated solely upon the best interests of the child — for, if such were the ■case, many parents could be deprived of their issue where the adoptive parents proved that they were able to offer to the child greater opportunities for education, •environment and culture.
 

 Counsel for Paul has asked that we not only reverse the judgment below but that we order that the custody of the child be given to his client. We cannot grant this request because,
 
 in
 
 our view, the withdrawal by the natural father of the consent previously given compels a dismissal of the adoption proceeding. Hence, the incidental order awarding temporary custody falls and the parties are placed in the same position as though the adoption proceeding was never filed. It appears in this case that the father voluntarily surrendered the custody of the child to Mr. and Mrs. Green. The matter of his right to regain the custody of his child cannot be decided in this proceeding. .
 

 The judgment appealed from is reversed and it is ordered that the adoption proceeding be dismissed at the costs of petitioners.
 

 HAWTHORNE, J., concurs in the decree.
 

 [1]
 

 This discussion, of course, is not pertinent in cases of adoption of children surrendered under provisions of Act No. 91 of 1942 and foundlings. See Foster V. Richardson, 210 La. 922, 28 So.2d 610;
 

 [2]
 

 Prior to Act No. 46 of 1932, adoption was effected by the simple procedure of the execution of a notarial act signed by the adoptive parents and the natural parents or the survivor, in the case of the death of one, or the legal tutor. By Act No. 46 of 1932, as amended. by Act No. 44 of 1934, adoption was accomplished by the execution of a notarial act, as formerly provided, accompanied by the approval of a court of competent jurisdiction after proceedings therein.
 

 Act No. 233 of 1936 was the first statute dealing exclusively with adoption of children under 17 years of age. It provided for a notarial act signed by the parties (adoptive and natural parents)
 
 *174
 
 and approval of a court of competent jurisdiction, with the natural parents being made parties to the petition. Section 5 of that act relieved the petitioners of the duty of citing the natural parents where their consent had been obtained in writing and filed in the suit.
 

 By Act No. 428 of 1938, the requirement of a notarial act was eliminated. That statute provided for the filing of a petition in the Juvenile Court with service on the living parents unless the child had been legally surrendered, removed from their custody or judicially declared abandoned. It further provided that, where the address of the parents was unknown, the Department of Public Welfare must attempt to locate them and “obtain the necessary consent to the proposed adoption”; that the adoptive parents must keep the child for six months after the interlocutory decree before applying for a final decree; that, after thirty days from this application, if “no objections to said application are filed”, a final decree may issue and that, if objections are filed, there must be a hearing. The act further provided that an interlocutory decree can be set aside for good cause either by the court on its own motion or by the State Department of Public Welfare or by motion of the natural parents.
 

 The latest act on the subject of adoption, Act No. 154 of 1942 which is applicable to this case, is substantially the same as its predecessor, Act No. 428 of 1938. However, it is significant to note that Section 7 of Act No. 154 of 1942, which sets forth the procedure necessary to obtain a final decree, differs from the former law in that it makes it mandatory that the findings of the Department of Public Welfare, which are reported to the judge, be based “on the availability of said child for adoption * * *
 

 Thus, it will be seen that our many statutes on adoption specifically provide for and envision the continuing consent of the natural parents. These laws, of course, must be given a strict construction as they are in derogation of the natural right of the parent to his child. They are not to be confused with statutes dealing with neglected or delinquent children and the paramount right of the state to deprive the natural parent of the custody of his child where it appears that the welfare of the child will be best served thereby.