375 So.2d 103 (1979)
In re Charles F. HAYNES, Jr.
v.
Michael Ray MANGHAM.
No. 64219.
Supreme Court of Louisiana.
September 4, 1979.
Rehearing Denied October 8, 1979.
G. Michael Pharis, Taylor, Porter, Brooks & Phillips, Baton Rouge, for plaintiff-applicant.
Ray A. Barlow, Hargrove, Guyton, Ramey & Barlow, Shreveport, for defendant-respondent.
CALOGERO, Justice.
Relator is a father who opposed the adoption of his child by the second husband of the child's mother, relator's former wife. *104 The adoption was granted under R.S. 9:422.1 which permits adoption without the consent of a legitimate parent when the spouse of the parent granted custody is seeking the adoption and the legitimate parent has refused or failed to comply with a court order of support for a period of one year.[1] The Court of Appeal affirmed the trial court judgment granting the adoption. 368 So.2d 783 (La.App. 2nd Cir. 1979). Upon application of the child's father we granted writs. 369 So.2d 464 (La.1979).
Relator, Charles F. Haynes, Jr., and the child's mother, Melinda Waller Haynes Mangham, were divorced in September of 1974. The judgment of divorce granted custody of the child to the mother subject to reasonable visitation rights in favor of the father. The judgment further provided that Charles Haynes pay child support of $400 per month as well as the child's educational and medical expenses. In July of 1976, the child's mother married Michael Mangham, respondent herein, and moved with the child to Shreveport. On December 29, 1977 respondent filed a petition for adoption of the child contending that the consent of Charles Haynes was not necessary because he had failed to comply with the order of support rendered in the divorce judgment for more than one year preceding the filing of the petition. Haynes opposed the adoption alleging that he was not delinquent in payment.
The primary issue at trial was the amount of child support, if any, delinquent at the time the petition for adoption was filed. The parties stipulated that the father was at all times financially able to pay the court ordered support. Mr. Haynes testified that he made regular payments in compliance with the order until August of 1976 when he learned that his former wife had remarried without informing him of her intention to do so. He persisted in not paying when he learned in January of 1977 that his daughter was, without his consent or knowledge, using her stepfather's name, Mangham, at school. After consulting with his attorney Haynes made further payment of $1200 on March 31, 1977.
At trial, Haynes presented evidence of payments on the family home made before the community property settlement under which his former wife acquired the home, and payment of various travel and medical expenses of the child. These were made between the date of the divorce judgment and the date of the filing of the petition for adoption. He argued that these and his earlier payments exceeded his total monthly obligation under the court order, that he was not delinquent, but was in fact entitled to a credit for over-payment. Respondent on the other hand contended that the asserted payments other than monthly support sums could not be imputed to the order's basic support obligation and that although the $1200 payment in March was within a year of the filing of the adoption petition, that payment was properly to be credited to the months September, October and November, of 1976 making Haynes thirteen months behind in payments by December, 1977, when the adoption petition was filed.
For resolution of this litigation, we accept those facts most favorable to the respondent and those consistent with the findings of fact in both lower courts  that none of the payments made on Mrs. Mangham's home (these occurred before consummation of the community property settlement) or for other causes can be imputed to the *105 payment of the support order's monthly sum; that relator's last regular payment was in August of 1976; and that his only payment thereafter was $1200 on March 31, 1977. In this context the case presents a purely legal question: Has the natural father "failed to comply with the court order of support for a period of one year" and thus lost his right to prevent the adoption of his child by withholding his consent to the adoption?
Prior to the enactment of R.S. 9:422.1, adoption without the consent of both parents was not allowed in Louisiana. Apparently in response to the decision in Madere v. Long, 231 La. 498, 91 So.2d 771 (1956) which refused to permit the adoption of a child when the consent of the child's legitimate father had not been obtained, the legislature enacted R.S. 9:442.1 to permit adoption without consent when the legitimate parent refuses or fails to comply with a court order of support for a period of three years or more. In 1960 the statute was amended to reduce the period of non-payment to a year and to extend the privilege of adoption to grandparents awarded custody.[2]
Recognizing that R.S. 9:422.1 and other adoption statutes are in "derogation of the natural rights of a legitimate parent to the child and of the child to the parent," Louisiana courts have strictly construed laws providing for adoption. In re LaFitte, 247 La. 856, 174 So.2d 804 (1965); Adoption of Rapp, 348 So.2d 107 (La.App. 4th Cir. 1977); Poynot v. Pfister, 348 So.2d 98 (La.App. 4th Cir. 1977); In re Brannon, 340 So.2d 654 (La.App. 2d Cir. 1976); In re Stanford, 313 So.2d 849 (La.App. 2d Cir. 1975). As we observed in Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966), because "[t]ies between parent and child [are] the closest and strongest within the human family, courts sever them with extreme reluctance."
The interpretation of the language of R.S. 9:422.1 and its application to the facts of this case is not a simple matter.[3] As earlier indicated we have a situation in which a father, who was previously current in his payment of support, failed to pay support for a period of seven months. He paid $1200, the equivalent of three months' payment, then made no further payments for nine months at which time the adoption petition was filed.
The language "refused or failed to comply with a court order of support for a period of one year" can be interpreted in a number of ways: It can be interpreted on the one extreme so rigorously as to apply even to the parent who pays each month for twelve consecutive months prior to suit, but in each case for an arrearage, so that for the full twelve months he had never been in full compliance with the court order, and on the other extreme so leniently as to permit any payment however small, within twelve months prior to the filing of the petition for adoption and irrespective of the amount of accumulated arrearages, to suffice to prevent application of the statute. Neither of these extremes is acceptable.
Required as we are to achieve a result in this litigation by interpreting and applying the statute, we find that a common sense interpretation is the following: If a parent under court order to support a child has not made a significant support payment within a year prior to filing of the petition for adoption, that parent loses the right to prevent the adoption by withholding consent.
In the instant case relator's $1200 payment constituted 25% of his yearly support obligation and 42% of his arrearage (three months of seven) at the time the payment was paid. It was made within a year of the filing of the petition for adoption. And it was a significant support *106 payment. Thus he did not fail "to comply with a court order of support for a period of one year."
We are mindful of this Court's decision in In re Ackenhausen, 244 La. 739, 154 So.2d 380 (1963) in which we held that one $50 payment within a year of suit on a $1440 annual support obligation could not prevent the child's adoption under R.S. 9:422.1. There we stated that despite the jurisprudential rule that laws providing for adoption should be strictly construed, R.S. 9:422.1 should not be so narrowly interpreted that any payment within the year could prevent adoption:
"In construing the statute here under consideration which dispenses with consent in adoption proceedings under certain conditions, we are mindful of the above pronouncements, but we do not propose to give the statute such a strict interpretation as to make it ineffective and inoperative. To hold that under the statute there must be a complete refusal or failure to pay any sum whatever for one year before consent would be dispensed with would be to disregard completely the obligation which a parent has to provide support and maintenance for his child. Such a holding would permit an unworthy parent, in complete disregard of his obligation to his child, to prevent an adoption which might be to the best interest of the child by making a token payment of a nominal sum once each year insufficient to provide for maintenance and support. Such a strict construction would lead to absurd consequences and make the statute meaningless and ineffective." (emphasis provided)
Although the "token" payment of a nominal sum within a year of the adoption did not prevent the application of R.S. 9:422.1 in that case, the Court recognized that a more substantial payment in another case might:
". . . Whether a legitimate parent has failed or refused to comply with an order of support so that consent is not required for adoption will, of course, have to depend on the facts of each case. If a parent has arbitrarily and without just cause refused to pay any sum whatever, no problem is presented. Also, if the payments have been insignificant when compared with the amount ordered by the court to be paid and the parent cannot show that the failure to pay has been with just cause and therefore excusable, the order to support has not been complied with and consent is not required." In re Ackenhausen, supra at 383. (emphasis provided)
We believe our result here is consistent with Ackenhausen and the language cited in that opinion. While $50 on a $120 monthly$1,440 annual support obligationin that case may indeed have been a "token payment of a nominal sum" and "insignificant when compared with the amount ordered by the court to be paid" the same cannot be said of a $1200 payment on a $400 monthly$4800 annual support obligation. Also, the fact that the child's father may have made the $1200 payment only because he learned that his failure to comply with the court order for a year might result in his child's adoption notwithstanding his opposition is irrelevant. Whatever his motive, the not insignificant payment operated to bar application of the statute.

Decree
For the foregoing reasons, the judgments of the district court and the Court of Appeal are reversed; plaintiff's petition is dismissed at his cost.
REVERSED; PETITION DISMISSED.
SUMMERS, C. J., dissents.
DENNIS, J., dissents and assigns reasons.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by the court of appeal. State in the Interest of Haynes, 368 So.2d 783 (La.App. 2d Cir. 1979).
NOTES
[1] R.S. 9:422.1 provides:

"If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
(1) The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and
(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or
(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents. (emphasis provided)
[2] In 1962 R.S. 9:422.1 was further amended to provide a severability clause, to reword the first section, and to add a third section dealing with a legitimate parent who is a non-resident.
[3] See Symposium on 1962 Legislation, 23 La.L. Rev. 41, 46 (Dec. 1962) in which Professor Robert Pascal observes that the judiciary will be required to interpret this "inartfully drawn statute" [R.S. 9:422.1] with care to prevent injustice.