661 So.2d 584 (1995)
In re Joel David ANDERSON Applying for Intrafamily Adoption, Plaintiff-Appellant,
v.
Richard Neal RAMER, Sr., Defendant-Appellee.
No. 27,469-JA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*585 Love, Rigby, Dehan & McDaniel by Cary B. Bryson, Shreveport, for appellant.
Elton B. Richey, Jr., Shreveport, for appellee.
Before LINDSAY, BROWN and STEWART, JJ.
BROWN, Judge.
Joel Anderson appeals from a judgment denying his petition for the adoption of his stepchildren. We reverse and render.

FACTS
The divorce, custody and child support battles between respondent, Richard Neal Ramer, Sr., and his ex-wife, Sheilla [Ramer] Anderson provide the setting for this case. Ramer is domiciled in Enid, Oklahoma. Mrs. Anderson, who is now married to petitioner, Joel Anderson, is domiciled in Bossier City, Louisiana.
Two children, Richard, Jr. [Rich] and Nichole, were born of the marriage between Richard Ramer and Sheilla Ramer Anderson. The Ramers were divorced in Oklahoma in 1985. Mrs. Anderson was awarded primary custody of the children and Ramer was ordered to pay $200 per month in child support. Ramer, however, persistently failed to pay the court ordered support and accumulated sizable arrearages. When the adoption petition was filed Ramer's debt for past due support was approximately $10,000.
Sheilla married Joel Anderson, a captain in the Air Force, on August 20, 1988. Because of Anderson's transfer to Barksdale Air Force Base, the family moved to Bossier City, Louisiana.
On February 2, 1994, Captain Anderson filed a petition for intrafamily adoption and termination of Ramer's parental rights pursuant to LSA-Ch.C. Art. 1245(C). Petitioner alleged that Ramer's consent was unnecessary because of his failure to pay child support. Ramer refused to consent to the adoption which he claimed was not in the children's best interest.
Because of child support payments totaling $950 made in the year before Anderson instituted adoption proceedings, the trial court found Ramer's consent essential and dismissed Anderson's petition for adoption. It is from this judgment that Anderson has appealed.

DISCUSSION
Louisiana's Children's Code provides for intrafamily adoptions, including, as here, that by a spouse of the custodial parent of the children to be adopted. Under LSA-Ch.C. Art. 1193, the consent of both mother and father is required; however, this consent may be dispensed with in certain situations as provided by LSA-Ch.C. Art. 1245:
C. When a parent is married to a stepparent petitioner and both of the following conditions exist:
(1) The parent married to the stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction.
(2) The noncustodial parent is a nonresident of this state and has failed to support the child for a period of one year after the judgment awarding custody.
Petitioner, Joel Anderson, is married to Sheilla [Ramer] Anderson, who was awarded custody of the children born of her previous marriage to respondent, Richard Ramer. Ramer, the noncustodial parent, is a resident *586 of Oklahoma. The critical issue is whether Ramer failed to support the children for a period of one year after the custody judgment. Under the circumstances of this case, the amount of delinquent child support at the time the petition for adoption was filed is a salient factor in the determination of that question.
In Haynes v. Mangham, 375 So.2d 103 (La.1979), the supreme court applied a common sense interpretation to LSA-R.S. 9:422.1, the predecessor to Children's Code Article 1245. The court in Haynes held that a parent under a court order to support a child who has not made a significant support payment within a year prior to the filing of the petition for adoption cannot prevent the adoption by withholding consent. Whether the support provided is significant depends on the particular facts and circumstances of the case under consideration. Haynes, supra; Tutorship of Shea, 619 So.2d 1236 (La.App. 3d Cir.1993).
We accept the facts found by the trial court. Ramer made payments totaling $950 between February 1993 and February 1994 on a $2,400 annual support obligation; however, Ramer was "substantially" in arrears at that time. We cannot agree with the trial court's conclusion that Haynes, supra, has defined significant support "as being something only in the range of twenty to thirty percent of the alimentary obligation [for the year preceding the filing of the petition]," without consideration of the accumulated arrearage.
Richard and Sheilla Ramer [Anderson] were divorced in 1985 in Oklahoma. Custody of the two children was awarded to Mrs. Anderson and Ramer's child support obligation was set at $200 per month. Because of Ramer's consistent failure to pay child support, Mrs. Anderson obtained several judgments from the court in Oklahoma reflecting a substantial and continuing delinquency in support payments.
To establish that the $950 paid in the twelve months before the petition for adoption was filed was not significant, petitioner's counsel sought to introduce evidence of the accumulated arrearage. The trial court initially limited evidence on the issue of Ramer's history of non-payment, stating, "[i]f it's beyond that year [the year prior to the filing of the petition for adoption] ... it doesn't seem to me that it's relevant." According to the trial court, under Haynes, the only issue was whether Ramer had made significant payments in the year prior to the filing of the adoption petition. Thereafter, the trial court did allow the testimony concerning Ramer's history of nonpayment "on the issue of what's in the best interest of the children."
Haynes v. Mangham, supra, requires rather than precludes consideration of the amount of accumulated arrearage in evaluating whether significant support payments have been made in the year before institution of adoption proceedings.
In Haynes, supra, the father, who was previously current in his payments, failed to pay support for a period of seven months. Then, after consulting with his attorney, he made a $1200 payment. No other payment was made for the nine month period before the adoption was filed. The court stressed that it was unacceptable to permit any payment, however small, within the twelve months prior to the filing and irrespective of the amount of accumulated arrearage, to prevent the adoption. Id. at 105.
The amount of arrearage is one factor in determining whether a significant payment was made. In Haynes, the father's payment of $1200 constituted 25% of his yearly support obligation of $4,800 and 42% of his arrearage (three months out of seven) at the time the payment was made. In this particular situation, the court found the payment to be significant. The Haynes court, however, reiterated the holding of In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963), that "token" payment of a nominal sum would not prevent the nonconsensual adoption.
Contrary to the father in Haynes, Ramer has not made regular, substantial child support payments since the Oklahoma court's original order of support in 1985. The Oklahoma judgments reflecting Ramer's support arrearages were introduced into evidence. The first judgment, rendered January 29, 1990, showed an arrearage of $7,000, which was subsequently reduced by proof of *587 Ramer's payment of $1,700 in medical/hospital expenses. A second judgment, rendered October 29, 1990, reflected additional arrearages of $1,519.31 plus interest. A third judgment, rendered April 6, 1992, reflected a reduced balance of $4,421.30 owing on the January 1990 judgment and in addition, a $707.32 debt, which had accrued since the second judgment. Thus, as of April 6, 1992, the date of the third judgment, Ramer's outstanding child support debt was $6,647.93.
Ramer paid no support for the remainder of 1992 ($1,600) and only $950 between February 1993 and February 1994. Thus, Ramer's arrearage was approximately $10,000 (a figure exclusive of interest) when this adoption petition was filed in February 1994.
In Tutorship of Shea, 619 So.2d 1236 (La. App. 3d Cir.1993), writ denied, 626 So.2d 1165 (La.1993), the noncustodial parent had an accumulated arrearage of $5,980. The parent's payments in the year prior to the filing of the adoption petition constituted 11.5% of the support owed for the eighteen month period before the petition was filed and 8.6% of the total support owed. The court found the parent's payment to be insignificant.[1]
Ramer's payment of $950 within the year before Anderson's institution of adoption proceedings constituted 39% of his annual support obligation; however, this payment is less than 10% of the accumulated arrearage. The trial court was in error in not considering the total history of noncompliance by Ramer with his support responsibility. After reviewing all of the circumstances, we cannot find the payments made by Ramer in the year preceding the petition for adoption to be significant.[2]
Our finding that Ramer's consent is unnecessary because of his failure to provide significant support does not end our analysis. We must now determine whether adoption is in the best interest of the children.
A parent's failure to support his children does not necessarily mean that it is in the best interest of the children to sever their ties with the natural parent. In re C.B., Applying for Adoption, 94-0755 (La. 10/17/94), 643 So.2d 1251. A dual focus approach, considering the love and home environment provided by the stepparent and the depth and closeness of the children's ties with the noncustodial natural parent, is appropriate. In re Glass Applying for Adoption, 424 So.2d 383 (La.App. 2d Cir.1982).
Following his marriage to their mother in 1988, Anderson has provided the children with love, support and a stable home environment. Rich and Nichole call Anderson "Dad" and have lived with him for more than half of their life. The record evidences the stability and security experienced by the children in the Anderson home. Both children testified unequivocally of the love they feel for Anderson and their desire to be adopted by him.
Although not reaching this issue, the trial court, in dicta, found that Mr. Anderson had a good relationship with the children and was an excellent stepparent.
On the other hand, the record shows that there is no meaningful bond between Ramer and the children. In addition to his unwillingness to support his children, the record clearly reveals that Ramer's bi-yearly visitations have been detrimental to Rich and Nichole. The testimony of Mickie Jones, the children's therapist, was that extensive psychotherapy would be required to reestablish any meaningful relationship between the children and their natural father. Ms. Jones further stated that the children would suffer from a continued relationship with Ramer.
Again in dicta, the trial court observed, "that it's obvious that Mr. Ramer hasn't done what he ought to have done ... and some of it is in the presence of the children. I don't think his relationship to Liz Tackett (Ramer's *588 girlfriend) is in the best interest of these children. I don't think that his failure to pay the child support as he was ordered to pay is in the best interest of the children."
We find that adoption by their stepfather, Joel Anderson, is in the best interest of Rich and Nichole.

CONCLUSION
For the reasons set forth above, we REVERSE the judgment of the trial court and RENDER judgment decreeing the adoption of the minor children, Richard Neal Ramer, Jr. and Nichole Ramer, by their stepfather, Joel Anderson. Cost to be paid by appellee, Richard Neal Ramer, Sr.
NOTES
[1] The Second Circuit considered the total amount of arrearage in determining whether a significant payment was made in In re M.M.L., 469 So.2d 1065 (La.App. 2d Cir.1985); and In re Glass Applying for Adoption, 424 So.2d 383 (La. App. 2d Cir.1982).
[2] As in Haynes, supra, we also reject Ramer's contention that normal costs incurred during summer visitation and a bill for his own psychological examination should be considered in reducing his outstanding debt.