STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1383


IN RE:

ADOPTION OF E.F.F.

BY J.L.B.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 6577
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

**OSWALD A. DECUIR**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**

**Nicholas Pizzolatto, Jr.**
**Department of Social Services, OCS**
**2771 Paul White Road**
**Lake Charles, LA 70611**
**(337) 475-3037**
**COUNSEL FOR APPELLANTS:**
    J. L. B.
    A. F. B.

**Brad Guillory**
**Loftin, Cain & LeBlanc, LLC**
**113 Dr. Michael Debakey Drive**
**Lake Charles, LA 70601**
**(337) 310-4300**
**COUNSEL FOR APPELLEE:**
  **P. L. F.**

**DECUIR, Judge.**

J.L.B., husband of A.F.B., petitioned the court to adopt E.F.F., the minor child of A.F.B. and her former husband, P.L.F. P.L.F. objected to the adoption and sought joint custody and visitation rights with his son. The trial court denied the petition for adoption, finding the evidence did not support the termination of P.L.F.'s parental rights. The trial court specifically found P.L.F.'s consent was necessary for the adoption under the circumstances of this case. We affirm.

A.F.B. and P.L.F. were married in 2004 and divorced in 2009. The evidence in the record reveals that P.L.F. had a drinking problem and became abusive toward his wife when he was drunk. Therefore, she divorced him and was granted sole custody of their child, who was then four years old. P.L.F. paid approximately one-third of his child support obligation. P.L.F. also exercised visitation rights until he was incarcerated for several months as a result of offenses committed against A.F.B. P.L.F. pled guilty to two counts of domestic abuse battery and three counts of violation of a restraining order. In 2010, A.F.B. married J.L.B., her third husband, who initiated this adoption proceeding one month after the wedding.

The evidence shows that P.L.F. was an active and engaged father from the time of E.F.F.'s birth until he was incarcerated. While he was undeniably abusive toward his wife, the evidence was unequivocal that he did not abuse or mistreat his son. In fact, A.F.B. and her mother testified that P.L.F. from the beginning changed diapers and handled feedings, then later took E.F.F. on outings such as fishing and camping trips or visits to the zoo. After the couple separated, P.L.F. exercised visitation, paid some child support, though not all that was ordered, and attempted to maintain a relationship with his son through phone calls and cards from prison. The testimony also revealed that P.L.F., at the time of trial, had quit drinking, attended Alcoholics Anonymous meetings, and took anger management

classes. He was also making full child support payments and was trying to catch up on arrearages.

The trial court characterized this as a "tough" case but ultimately concluded that the facts did not warrant the termination of P.L.F.'s parental rights so that E.F.F. would be free for adoption by J.L.B. The court based its decision on several factors. First, the court noted that in this case, P.L.F.'s consent to the adoption would be necessary. Second, the court acknowledged the good character of J.L.B. but commented that his marriage to A.F.B. is less than a year old, as of the time of trial. Finally, the court emphasized that the fundamental parent/child relationship deserves protection, respect, and deference. Contrary to that principle, however, the social worker who testified in favor of adoption was unable to assess the father/son relationship at issue. She was initially contacted to evaluate E.F.F. for behavior issues; she was not asked to perform an adoption study and was not given an opportunity to interview P.L.F. or perform a psychological evaluation. The trial court attributed P.L.F.'s lack of contact with his son in the year prior to trial to his incarceration and the length of time it took to get the case to trial.

> Ties between parent and child, being the closest and strongest within the human family, courts sever them with extreme reluctance. The natural rights flowing from this relationship form the basis for the legislative requirement in former statutes and jurisprudence that both parents must consent before a child can be adopted under the proceedings authorized by our law-making body. It was not until the passage of R.S. 9:422.1 by Act 501 of 1958 that the consent of both parents was dispensed with under the limited circumstances there set out; and it was not until Act 268 of 1960, amending R.S. 9:422.1, that this rule was extended to include grandparents. These statutes, being in derogation of the natural right of the parents to the child, and the right of the child to its parents, have consistently been strictly construed in the jurisprudence in favor of the parents. *Green v. Paul*, [31 So.2d 819 (La.1947)]; *In re Ackenhausen*, [154 So.2d 380 (La.1963)]; *In re Lafitte*, 247 La. 856, 174 So.2d 804 [(La.1965)]; and *In re Hughes*, [176 So.2d 158 (La.1965)].

> *Roy v. Speer*, 192 So.2d 554, 556-557 (La.1966).

In *German v. Galley*, 98-197 (La.App. 3 Cir. 5/20/98), 712 So.2d 1034, *writ denied*, 98-2189 (La. 11/13/98), 731 So.2d 259, this court reversed a judgment granting an adoption based on the non-consenting father's significant support of the child, with significant support being defined as 20% to 30% of the child support obligation. The *German* court described the petitioner's burden of proof in an adoption case as follows:

> In interpreting La.Ch.Code art. 1245(D)(1), previously codified in La.R.S. 9:422.1, the Louisiana Supreme Court in *Haynes v. Mangham*, 375 So.2d 103 (La.1979) took a "common sense" interpretation of the statute in stating: "If a parent under court order to support a child has not made a significant support payment within a year prior to filing of the petition for adoption, that parent loses the right to prevent the adoption by withholding consent." (Emphasis added).
>
> . . . However, "significant support has been defined as being something only in the range of twenty to thirty percent of the alimentary obligation." *In re Adoption of Broussard*, 469 So.2d 454, 456 (La.App. 3 Cir.), *writ denied*, 474 So.2d 1303 (La.1985), citing *In re May*, 441 So.2d 500 (La.App. 2 Cir.1983).
>
> In addition to establishing the failure to provide support, petitioners also have the burden of showing:
>
> "1) that the failure to pay child support must have been without just cause, *In re Bas, Applying for Adoption*, 424 So.2d 405 (La.App. 2nd Cir.1982), and 2) that the adoption must be in the best interest of the child, *Adoption of Latiolais*, 384 So.2d 377 (La.1980)."
>
> *Wyatt v. Dept. of Public Welfare*, 442 So.2d 1369, 1373, citing *In re MDA, Applying for Adoption*, 427 So.2d 1334 (La.App. 2 Cir.1983).

*Id.*

In the present case, P.L.F. provided significant support for his son, and there has been no showing that the proposed adoption would be in the best interest of E.F.F., who the trial court found will benefit from having both P.L.F. and J.L.B. in his life. We agree.

For the foregoing reasons, the judgment of the trial court is affirmed, at Appellants' cost.

**AFFIRMED.**